UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| SHAUN TAYLOR, individually and on behalf of all others similarly situated,<br><br>v.<br><br>LOWE'S COMPANIES, INC. | Case No. 5:22-cv-48<br><br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action |

# PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

## Summary

1. Like many other companies across the United States, Lowe's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Lowe's organization.

3. As a result, Lowe's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Shaun Taylor is one such Lowe's worker.

5. Lowe's could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Lowe's used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Lowe's pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Lowe's made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. Lowe's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Lowe's failure to pay wages, including proper overtime, for all hours worked also violates Missouri's Minimum Wage and Maximum Hour Law (MWHL), Mo. Rev. Stat. § 290.500 *et seq*. and Missouri common law.

11. Taylor brings this lawsuit to recover these unpaid overtime wages and other damages owed by Lowe's to him and Lowe's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Lowe's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by Lowe's to all these workers, along with the penalties, interest, and other remedies provided by federal and Missouri law.

**JURISDICTION & VENUE**

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Lowe's is headquartered in this District.

## PARTIES

16. **Plaintiff Shaun Taylor** is a natural person.

17. Taylor was, at all relevant times, an employee of Lowe's.

18. Taylor has worked for Lowe's since June 2019.

19. Taylor worked for Lowe's in Missouri.

20. Taylor represents at least two groups of similarly situated Lowe's workers.

21. Taylor represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Lowe's (including its subsidiaries and alter egos), who worked for Lowe's in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Taylor represents a class of similarly situated workers under Missouri law pursuant to Federal Rule of Civil Procedure 23. This "Missouri Class" is defined as:

> **All current or former non-exempt employees of Lowe's (including its subsidiaries and alter egos) who worked for Lowe's in Missouri at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

24. **Defendant Lowe's Companies, Inc. ("Lowe's")** is a domestic corporation.

25. Lowe's is headquartered in this District.

26. Lowe's may be served by service upon its registered agent, **Corporation Service Company, 2626 Glenwood Ave., Ste. 550, Raleigh, NC 27608**, or by any other method allowed by law.

27. At all relevant times, Lowe's exerted operational control over its subsidiaries and alter egos.

28. At all relevant times, Lowe's substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

29. At all relevant times, Lowe's had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

30. Lowe's subsidiaries and alter egos include Central Wholesalers, Maintenance Supply Headquarters, and Rona, Inc.

31. Lowe's employed and/or jointly employed, with its subsidiaries and alter egos, Taylor and the Similarly Situated Workers.

32. Lowe's and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

33. Lowe's and its respective subsidiaries and alter egos are joint employers for purposes of Missouri law.

34. Throughout this Complaint, Lowe's and its subsidiaries and alter egos are referred to jointly as "Lowe's."

### COVERAGE UNDER THE FLSA

35. At all relevant times, Lowe's was an employer of Taylor within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36. At all relevant times, Lowe's was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37. Lowe's was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

38. During at least the last three years, Lowe's has had gross annual sales in excess of $500,000.

39. Lowe's was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

40. Lowe's employs many workers, including Taylor, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

41. The goods and materials handled, sold, or otherwise worked on by Taylor, and other Lowe's employees and that have been moved in interstate commerce include, but are not limited to, telephones, computers, and office supplies and equipment.

## FACTS

42. Lowe's is a home improvement retailer. Lowe's, Who We Are, https://corporate.lowes.com/who-we-are (last visited Apr. 16, 2022).

43. Lowe's employs over 300,000 workers. Lowe's, Who We Are, https://corporate.lowes.com/who-we-are (last visited Apr. 16, 2022).

44. Many of Lowe's employees are non-exempt hourly and salaried workers.

45. Since at least 2021, Lowe's has used timekeeping software and hardware operated and maintained by Kronos.

46. On or about December 11, 2021, Kronos was hacked with ransomware.

47. The Kronos hack interfered with the ability of its customers, including Lowe's, to use Kronos's software and hardware to track hours and pay employees.

48. Since the onset of the Kronos hack, Lowe's has failed to keep accurate track of the hours that Taylor and Similarly Situated Workers have worked.

49. Instead, Lowe's has used various methods to estimate the number of hours Taylor and Similarly Situated Workers work in each pay period.

50. For example, Lowe's issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

51. As a result of Lowe's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

52. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

53. Taylor is one of the thousands of employees affected by these pay and timekeeping practices.

54. Instead of paying Taylor for the hours he actually worked (including overtime hours), Lowe's simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Taylor's actual hours worked and regular pay rates, in multiple workweeks.

55. In some instances, Taylor was paid portions of the overtime he worked, but the overtime rate he was paid was not at least 1.5 times his agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

56. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

57. Lowe's knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

58. Lowe's knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

59. Lowe's could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

60. Instead of accurately tracking hours and paying employees their overtime, Lowe's decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

61. Even to the extent it did pay some overtime to affected employees, Lowe's failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Lowe's did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

62. It was feasible for Lowe's to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

63. But it chose not to do that.

64. In other words, Lowe's pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to

those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

65. Taylor is just one of the many Lowe's employees who had to shoulder the burden of this decision by Lowe's.

66. Taylor was a non-exempt hourly employee of Lowe's.

67. Taylor regularly worked over 40 hours per week for Lowe's.

68. Taylor's normal, pre-Kronos hack hours are reflected in Lowe's records.

69. Since the Kronos hack, Lowe's has not paid Taylor for his actual hours worked each week.

70. Since the hack took place, Lowe's has not been accurately recording the hours worked by Taylor and its other workers.

71. Even when Lowe's has issued payment to Taylor for any overtime, the overtime is not calculated based on Taylor's regular rates, as required by federal law.

72. Lowe's was aware of the overtime requirements of the FLSA.

73. Lowe's nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Taylor.

74. Lowe's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

75. The full overtime wages owed to Taylor and the Similarly Situated Workers became "unpaid" when the work for Lowe's was done—that is, on Taylor and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*,

776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

76. At the time Lowe's failed to pay Taylor and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Lowe's became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

77. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

78. Even if Lowe's made any untimely payment of unpaid wages due and owing to Taylor or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

79. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

80. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Lowe's acts and omissions resulting in the unpaid wages in the first place.

81. Taylor and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Lowe's under federal law.

## COLLECTIVE ACTION ALLEGATIONS

82. Taylor incorporates all other allegations.

83. Numerous individuals were victimized by Lowe's patterns, practices, and policies, which are in willful violation of the FLSA.

84. Based on his experiences and tenure with Lowe's, Taylor is aware that Lowe's illegal practices were imposed on the FLSA Collective.

85. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

86. These employees are victims of Lowe's respective unlawful compensation practices and are similarly situated to Taylor in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

87. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

88. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

89. Lowe's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

90. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

91. Taylor incorporates all other allegations.

92. The illegal practices Lowe's imposed on Taylor were likewise imposed on the Missouri Class members.

93. Numerous other individuals who worked for Lowe's were were not properly compensated for all hours worked, as required by Missouri law.

94. The Missouri Class is so numerous that joinder of all members of the class is impracticable.

95. Lowe's imposed uniform practices and policies on Taylor and the Missouri Class members regardless of any individualized factors.

96. Based on his experience and tenure with Lowe's, as well as coverage of the Kronos hack, Taylor is aware that Lowe's illegal practices were imposed on the Missouri Class members.

97. Missouri Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

98. Lowe's failure to pay wages and overtime compensation in accordance with Missouri law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Missouri Class members.

99. Taylor's experiences are therefore typical of the experiences of the Missouri Class members.

100. Taylor has no interest contrary to, or in conflict with, the members of the Missouri Class. Like each member of the proposed class, Taylor has an interest in obtaining the unpaid wages and other damages owed under the law.

101. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

102. Absent this action, many Missouri Class members likely will not obtain redress of their injuries and Lowe's will reap the unjust benefits of violating Missouri law.

103. Furthermore, even if some of the Missouri Class members could afford individual litigation against Lowe's, it would be unduly burdensome to the judicial system.

104. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

105. The questions of law and fact common to each of the Missouri Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Taylor and the Missouri Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

    b. Whether Lowe's failure to pay Taylor and the Missouri Class members overtime at the rates required by law violated Missouri law; and

    c. Whether Lowe's failed to make and keep the employee, time, and pay records regarding Taylor and the Missouri Class members required under Missouri law.

106. Taylor's claims are typical of the Missouri Class members. Taylor and the Missouri Class members have all sustained damages arising out of Lowe's illegal and uniform employment policies.

107. Taylor knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

108. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO TAYLOR AND THE FLSA COLLECTIVE

109. Taylor incorporates each other allegation.

110. By failing to pay Taylor and the FLSA Collective members overtime at 1.5 times their regular rates, Lowe's violated the FLSA. 29 U.S.C. § 207(a).

111. Lowe's owes Taylor and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

112. Lowe's owes Taylor and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

113. Likewise, Lowe's owes Taylor and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

114. Lowe's knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

115. Because Lowe's knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Lowe's owes these wages for at least the past three years.

116. Lowe's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

117. Because Lowe's decision not to pay overtime was not made in good faith, Lowe's also owes Taylor and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

118. Accordingly, Taylor and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECIBD CAUSE OF ACTION—VIOLATIONS OF MISSOURI WAGE AND HOUR LAW AS TO TAYLOR AND THE MISSOURI CLASS

119. Taylor incorporates all other allegations.

120. The conduct alleged in this Complaint violates the MWHL. Mo. Rev. Stat. § 290.500 *et seq*.

121. At all relevant times, Lowe's has been an "employer" within the meaning of the MWHL. Mo. Rev. Stat. § 290.500(4).

122. At all relevant times, Lowe's employed Taylor and the Missouri Class members as "employees" within the meaning of the MWHL. Mo. Rev. Stat. § 290.500(3).

123. The MWHL requires an employer like Lowe's to pay employees at a rate no less than the minimum wage for each hour worked. Mo. Rev. Stat. § 290.502.

124. As a result of Lowe's failure to pay Taylor and the Missouri Class at a rate no less than the minimum wage for all hours worked, Lowe's violated the MWHL.

125. The MWHL requires an employer like Lowe's to pay overtime to all non-exempt employees. N Mo. Rev. Stat. § 290.505.

126. Taylor and the other Missouri Class members are non-exempt employees who are entitled to be paid overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate. Mo. Rev. Stat. § 290.505.

127. Within the applicable limitations period, Lowe's had a policy and practice of failing to pay proper overtime to the Missouri Class members for their hours worked in excess of 40 hours per week.

128. As a result of Lowe's failure to pay proper overtime to Taylor and the Missouri Class members for work performed in excess of 40 hours in a workweek, Lowe's violated the MWHL.

129. The MWHL requires an employer like Lowe's to make and keep accurate records of the identities and occupations of employees, their rates of pay, the amounts paid to them, and the time worked each week. Mo. Rev. Stat. § 290.520.

130. Within the applicable limitations period, Lowe's had a policy and practice of failing to make and keep the records required by the MWHL.

131. As a result of Lowe's failure to pay proper overtime to keep the records required by the MWHL, Lowe's violated the MWHL.

132. Lowe's acts and omissions constituting its violations of the MWHL were not undertaken in good faith or with reasonable grounds for believing the acts and omissions were not in violation of the MWHL.

133. Taylor and the Missouri Class members are entitled to recover their unpaid wages, liquidated damages in an amount twice the unpaid wages, attorneys' fees, costs, and all other legal and equitable relief provided under the MWHL. Mo. Rev. Stat. § 290.527.

### THIRD CAUSE OF ACTION–BREACH OF CONTRACT AS TO TAYLOR AND THE MISSOURI CLASS

134. Taylor incorporates all other allegations.

135. Lowe's entered into contractual agreements with Taylor and each of the Missouri Class members.

136. Lowe's contractual agreements with Taylor and the Missouri Class Members were oral or written contracts.

137. Whether the contractual agreements of Taylor and the Missouri Class Members were formal contracts, collective bargaining agreements, written or oral, or otherwise does not alter Lowe's contractual obligations.

138. Taylor and the Missouri Class Members' status as at-will employees or otherwise is irrelevant to whether they had an enforceable contract for wages with Lowe's.

139. Under their contractual agreements, Taylor and each of the Missouri Class Members agreed to perform work for Lowe's, and Lowe's agreed to fully compensate each worker for all time worked at the agreed upon rates.

140. Taylor and the Missouri Class members carried out their contractual duties by performing work by Lowe's.

141. Lowe's breached its agreement with Taylor and the Missouri Class members by failing to compensate Plaintiff and the Missouri Class members for all hours worked at the agreed upon rates.

142. Taylor and the Missouri Class Members had regularly scheduled paydays with Lowe's.

143. Lowe's failed to pay Taylor and the Missouri Class Members their contractually agreed wages on their regularly scheduled payday.

144. As a result of Defendant's breach of agreement, Plaintiff and the Missouri Class members have suffered damages.

145. Plaintiff and the Missouri class members are entitled to recover their contractually agreed wages, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief.

**FOURTH CAUSE OF ACTION—UNJUST ENRICHMENT
AS TO TAYLOR AND THE MISSOURI CLASS**

146. Taylor incorporates all other allegations.

147. Lowe's acts and omissions in denying wages and overtime pay to Taylor and the Missouri Class members was done knowingly, willfully, or with reckless disregard to the rights of Taylor and the Missouri Class members.

148. As a result of its unlawful acts and omissions, Lowe's received substantial benefit in the form of financial compensation that rightfully belonged to Taylor and the Missouri Class Members.

149. It would be unjust to allow Lowe's to retain these benefits, which were gained through unlawful means, including but not limited to, failing to pay Taylor and the Missouri Class members the wages and overtime pay they were entitled to under Missouri law.

150. Lowe's has been unjustly enriched by its unlawful acts and omissions.

### RELIEF SOUGHT

Taylor prays for judgment against Lowe's as follows:

    a. For an order certifying a collective action for the FLSA claims;

    b. For an order certifying a class action for the Missouri law claims;

    c. For an order finding Lowe's liable for violations of federal wage laws with respect to Taylor and all FLSA Collective members covered by this case;

    d. For an order finding Lowe's liable for violations of Missouri wage laws with respect to Taylor and all Missouri Class members covered by this case;

    e. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Taylor and all FLSA Collective members covered by this case;

    f. For a judgment awarding all unpaid wages, liquidated damages, and penalties under Missouri wage laws to Taylor and all Missouri Class members covered by this case;

    g. For an equitable accounting and restitution of wages due to Taylor and all FLSA Collective and Missouri Class members members covered by this case;

    h. For a judgment awarding attorneys' fees to Taylor and all FLSA Collective and Missouri Class members covered by this case;

    i. For a judgment awarding costs of this action to Taylor and all FLSA Collective and Missouri Class members covered by this case;

j.  For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Taylor and all FLSA Collective and Missouri Class members covered by this case; and

k.  For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

/s/ Kimberly De Arcangelis
**Kimberly De Arcangelis, Esq.**
FBN 0025871
*(seeking admission pro hac vice)*
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
PO Box 4979
Orlando, FL 32802-4979
Telephone:  (407) 420-1414
Facsimile:  (407) 245-3383
Email: kimd@forthepeople.com

/s/ Matthew S. Parmet
**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
Telephonee  (713) 999 5228
Email: matt@parmet.law

**Attorneys for Plaintiff**

/s/ Adam A. Smith
Adam A. Smith
N.C. State Bar No.: 31798
**RIDDLE & BRANTLEY, LLP**
*LR 83.1 Attorneys for Plaintiff*
PO Box 11050
Goldsboro, North Carolina 27532
Telephone: (919) 778-9700
Facsimile:  (919) 432-1751
Email: aas@justicecounts.com